904 P.2d 1279

**In the Matter of the Appeal in MARICOPA COUNTY, JUVENILE ACTION NO. JS-9104.**

**No. 1 CA–JV 94–0082.**

Court of Appeals of Arizona, Division 1, Department C.

June 6, 1995.

Review Denied Oct. 24, 1995.*

---

* Zlaket and Martone, of the Supreme Court, voted    to grant the petition for review.

Susan L. Sandys, Phoenix, for child.

Frances K. Baseden, Phoenix, Guardian Ad Litem for child.

DeeAn Gillespie, Law Offices of DeeAn Gillespie, Phoenix, for appellant.

Jeffrey F. Arbetman, Phoenix, for appellee.

## OPINION

GRANT, Judge.

Natural father appeals from a juvenile court judgment severing his parental rights to his daughter Erin, who was born in 1982 and who lived with him until 1990 when he was arrested and charged with one count of sale of cocaine. The severance was ordered in 1994 solely on grounds that Father's 1991 sentence to prison for 5.25 years would deprive Erin of a normal home for a period of years. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 8–533(B)(4) (1989). On the facts presented, we conclude that the juvenile court did not abuse its discretion in severing Father's parental rights.

## I. Facts

Erin was born in December 1982, shortly before the 1983 marriage of Father and Mother. The couple's unhappy marriage was terminated by divorce in 1987. At that time the court ordered that Father and Mother share joint custody, with Father to provide Erin's primary residence and Mother to have standard visitation rights and pay $141 in monthly child support. Mother was unhappy that she had to pay child support and that Erin was living with Father. In 1988, Mother married Stepfather, a good husband and provider who quickly developed a close relationship with Erin.

In May 1990, with Erin and her half-brother, Eric, present, Father was arrested at his home for sale of cocaine to an undercover officer. When Father went to jail, Erin, then seven, went to live with Mother and Stepfather. In November 1990, the domestic relations court granted Mother's petition for sole custody of Erin. For reasons that are not clear on this record, the sheriff's office did not transport Father to the courtroom for the custody hearing apparently because Father stated he did not wish to appear. At the hearing the court ordered that he have no visitation with Erin and pay no child support. The court also ruled that on his release from prison, Father could petition to gain visitation rights (and begin child support obligations).

In April 1991, Father was convicted on the drug charge and sent to prison for the mitigated term of 5.25 years, which by law must be served day-for-day. Father will be released from prison in December 1995, about fifteen months after entry of the judgment severing his parental rights, and about twenty-seven months after Mother filed the severance petition in September 1993.

At the severance hearing, Mother and Stepfather testified that they sought severance of Father's parental rights because Erin had repeatedly expressed a strong desire that Stepfather adopt her. Erin had no contact with Father after his incarceration in 1990.

The severance trial in June and August 1994 was an emotional and hotly-contested proceeding in which Mother and Father offered the court much negative evidence about each other. Because the judgment does not include factual findings of unfitness, there is no need here for a litany of the negative evidence offered by Erin's parents about each other. It suffices to say that Mother admitted she had been a prostitute with drug and alcohol problems as well as mental health problems for some years until about 1984, Father admitted he abused drugs for several years until his arrest in 1990; neither parent thought the problems of the other were entirely in the past. In terms of positive evidence, the record supports a finding that both parents have substantially reformed in recent years, Father in prison and Mother in a new job and new marriage.

Three experts—an adoption services caseworker, a therapist (retained by Mother) and a psychologist (also retained by Mother)—testified that severance and subsequent adoption by Stepfather would be in Erin's best interests. At Father's request, the court appointed another psychologist to eval-

uate Erin's best interests and, based in part on this evaluation, the child's guardian *ad litem* reported to the court in August 1994 (post-trial) that she also believed that severance would be in Erin's best interests, although she was critical of the process of evaluation.

In August 1994, the court ordered severance of Father's parental rights, concluding in relevant part as follows:

2. The Petitioner [mother] has established by clear and convincing evidence that [father] is deprived of his civil liberties due to his conviction for sale of narcotic drugs, a felony. The sentence for that offense is of such a length that his child, Erin, has been and will be deprived of a normal home provided by him for a period of years sufficient to irreparably damage the parent-child relationship between [father] and his daughter, Erin. A.R.S. § 8–533(B)(4).

3. The Petitioner has not established by clear and convincing evidence that [father] abandoned his child Erin within the meaning of A.R.S. § 8–533(B)(1). (The Court does not find that [father's] actions did not amount to abandonment. The Court finds only that the Petitioner has not met the burden of proof with regard to this theory.)

4. The Petitioner has established by clear and convincing evidence that it is in the best interests of the child to terminate the parent-child relationship between her and [father].

Father timely appealed. We have jurisdiction pursuant to A.R.S. section 12–120.21(A)(1) (1992).

## II. Discussion

Father raises several issues, but we discuss only his claim that the court erred by severing parental rights on length-of-sentence grounds stated in paragraph 2 of the judgment. We do not agree with Father under the totality of the facts of this case. We find no abuse of discretion in paragraphs 3 and 4 of the judgment, nor do we find reversible error in the second sentence of paragraph 2, quoted above.

█ This Court will reverse a juvenile court's ruling only if its findings of fact are clearly erroneous or unsupported by reasonable evidence. *E.g., Maricopa County Juvenile Action No. JS–501568,* 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App.1994) (citing *Pima County Severance Action No. S–1607,* 147 Ariz. 237, 238, 709 P.2d 871, 872 (1985)); *Maricopa County Juvenile Action No. JS–8441,* 175 Ariz. 463, 465, 857 P.2d. 1317, 1319 (App.1993); *Pima County Juvenile Severance Action No. S–2710,* 164 Ariz. 21, 23, 790 P.2d 307, 309 (App.1990); *Yuma County J–88–201,* 172 Ariz. 50, 53, 833 P.2d 721, 724 (App.1992). Because of constitutional constraints, findings in support of severance must be demonstrated by clear and convincing evidence. *See, e.g., Maricopa County Juvenile Action No. JS–500274,* 167 Ariz. 1, 4–5, 804 P.2d 730, 733–34 (1990); *Pima County Juvenile Action No. S–1147,* 135 Ariz. 184, 185, 659 P.2d 1329, 1330 (App.1983) (citing *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

█ In severing Father's parental rights, the juvenile court relied solely on A.R.S. section 8–533(B)(4) (1989), which provides:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:[1]

\* \* \* \* \* \*

4. That the parent is deprived of civil liberties due to the conviction of a felony if the felony of which such parent was convicted is of such nature as to prove the unfitness of such parent to have future custody and control of the child, or if the sentence of such parent is of such a length that the child will be deprived of a normal home for a period of years.

Abandonment or neglect may also justify severance, but the juvenile court found that

---

1. The 1994 revision of A.R.S. section 8–533(B) replaces "the court may also consider the needs of the child" with "the court shall also consider the best interests of the child."

mother failed to meet her burden of proving abandonment, and the issue of neglect was not raised. *See* A.R.S. § 8–533(B)(1) and (2).

■ Because there was no finding that the nature of Father's conviction implied unfitness, the only statutory ground for severing his parental rights was that Erin was deprived of a normal home based on the length of the 5.25 year sentence, of which about 1.5 years remained when the severance hearing began in June 1994.

### A.

According to the facts in this case, we agree that a 5.25 year prison sentence supports a court-ordered severance of this parent-child relationship. We find no Arizona case upholding severance when a parent with a previous seven-year relationship with a child lost parental rights because of a 5.25 year prison sentence on a drug conviction. All reported Arizona cases mentioning section 8–533(B)(4) grounds are distinguishable.

In *Maricopa County Juvenile Action No. JS–7499,* 163 Ariz. 153, 786 P.2d 1004 (App. 1989), section 8–533(B)(4) was invoked to sever parental rights of a father sentenced to twenty-five years in prison for raping and sodomizing his seven year old daughter. Severance was granted and affirmed based on the wilful abuse grounds provided in section 8–533(B)(2). *Id.* at 159, 786 P.2d at 1010.

In the case of *Pima County Juvenile Severance Action No. S–2462,* 162 Ariz. 536, 785 P.2d 56 (App.1989), a father sought reversal of the severance of his parental rights because his conviction for murdering the children's Mother had been reversed. The appellate court found that grounds for severance existed apart from the murder conviction, including evidence that the two young children "either witnessed the natural father murder their mother or, at the very least, were exposed to her body after the murder occurred. The testimony regarding the emotional impact this had upon the children is overwhelming." *Id.* at 539, 785 P.2d at 59.

Perhaps the closest case to the present one is *Maricopa County Juvenile Action No. JS–5609,* 149 Ariz. 573, 720 P.2d 548 (App.1986), which affirmed severance of parental rights of a father sentenced to a nine year prison term following his brutal sexual assault of a senior citizen. In contrast to the seven year relationship between Father and child in the case before us, in that case, the child was one month old when the parents divorced, one year old when the father went to prison and three years old at the time of the severance hearing—at which time the father still had five years to serve on his sentence. This Court agreed with the juvenile court's finding that "[b]ecause of his incarceration, the child for all practical purposes does not know the [father] and in fact considers [the stepfather] as her father." This Court found that "nine years, or five years imprisonment at the time of hearing complies with the requirements of the statute as a matter of law." *Id.* at 576, 720 P.2d at 551. By contrast, at the time of the June 1994 severance hearing in this case, Father had only about 1.5 years to serve before his December 1995 release date.

*Pima County Juvenile Action No. S–1147,* 135 Ariz. 184, 659 P.2d 1329 (App.1983) affirmed a severance based on the length of sentence clause of section 8–533(B)(4). Father was serving a life sentence for second degree murder. *Id.* at 185, 659 P.2d at 1330.

*Pima County Juvenile Action No. S–949,* 134 Ariz. 442, 657 P.2d 430 (App.1982) involved severance of parental rights of a father who, before his daughter's first birthday, was sentenced to a twelve year prison term for various sex crimes. This Court did not address length of sentence issues, but affirmed on grounds of parental unfitness. *Id.* at 444, 657 P.2d at 432.

*Pima County Juvenile Action No. S–983,* 133 Ariz. 182, 650 P.2d 484 (App.1982) involved a father serving a seven year prison sentence for sexual assault and kidnapping. Sentence length was not a determining factor in the affirmance. The court found that the father's conduct implied unfitness by demonstrating "an inability or unwillingness to conform to accepted morality." *Id.* at 185, 650 P.2d at 487.

*Pima County Juvenile Action Nos. S–826 and J–59015,* 132 Ariz. 33, 643 P.2d 736

(App.1982) (clerical modification by *Juvenile Action No. S–1147,* 135 Ariz. at 185, 659 P.2d at 1330) affirmed severance based on unfitness for future parenting, not length of sentence. Convicted of rape and sodomy of a nine year old child, the father was serving a prison sentence of twenty years to life. *Id.* at 34–35, 643 P.2d at 737–38.

■ Unlike the parents whose rights were severed in cases presented above, Father in this case did not commit a crime involving sex or violent acts, and the trial court did not find that he was an unfit parent. The trial court accepted that prior to his arrest, Father had established a seven year parental relationship with Erin from the day she was born. Although Mother was convinced of Father's unfitness, and vice versa, and some evidence of unfitness of both the natural mother and natural father was presented by each side, the juvenile court did not express a finding that either parent was unfit. There was also no finding, nor support for a finding, that Erin would be harmed if Father's parental rights were not severed. The expert testimony on the subject was that she was a well-adjusted and strong-willed girl who would be temporarily hurt and angry if her adoption wishes were not granted.

Mother contends that Father's parenting in the past fell short of acceptable standards for raising a child. Arguably she is as correct about Father's past inadequacies as Father is regarding Mother's past inadequacies. The undeniable fact that both Mother and Father have much from which to recover is not dispositive. The Supreme Court has recognized that the "fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents...." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982).

Independent evidence was presented that Erin is an intellectually gifted child whose school performance had substantially improved after the transfer of custody to her Mother. There was expert testimony that Erin originated the idea of being adopted by her stepfather and no longer wished to have anything to do with her natural father.

Expert evidence supports the trial court's determination that Father's absence, under these circumstances, and from this child, *in fact* had the effect of breaking the previously shared father-daughter bond. Other cases rely on the assumption that a sentence of some number of years will break the parent-child bond and therefore prohibit a normal home. In this case, there is direct evidence and a specific factual finding that this parent's absence *in fact* had broken the bond. To say here that a 5.25 year sentence is not "long enough" to deny the child a normal home is to ignore real evidence, sufficient to support the juvenile court's finding using a clear and convincing standard of review, in favor of a general assumption that a 5.25 year sentence would not have such an effect.

■ When a natural parent does not consent to adoption, the adoption cannot proceed unless the court first terminates the parent's rights pursuant to the termination statute. *Maricopa County Juvenile Action No. JA 33794,* 171 Ariz. 90, 94, 828 P.2d 1231, 1235 (App.1991). We do not intend to hold that anyone sentenced to prison for 5.25 years or who had 1.5 years remaining at the time of a severance hearing should lose parental rights if the replacement parent was better than the original and was willing to adopt the child. However, these are among many factors to be considered by the trial court in a severance proceeding.

## B.

■ That severance will serve the best interests of the child is a necessary finding in addition to one or more statutory grounds. *E.g., Maricopa County Juvenile Action No. JS–8490,* 179 Ariz. 102, 107, 876 P.2d 1137, 1142 (1994). However, "[t]he parent-child relationship cannot be terminated merely because termination may be in the best interests of the child." *In the Matter of Guardianship of Mikrut,* 175 Ariz. 544, 547, 858 P.2d 689, 692 (App.1993); *Matter of Juvenile Action No. JS–6831,* 155 Ariz. 556, 558, 748 P.2d 785, 787 (App.1988). The Arizona Supreme Court has stated:

Considering the interests at issue, the courts of this state have concluded that

although the best interests of the child alone may not be sufficient to grant termination, they may be sufficient to deny termination. In other words, best interests of the child are a necessary, but not exclusively sufficient, condition for an order of termination.

*Juvenile Action No. JS–500274,* 167 Ariz. at 5, 804 P.2d at 734.

Parents have a fundamental interest in the care and custody of their children. *Santosky,* 455 U.S. at 753, 102 S.Ct. at 1394–95; *see also Juvenile Action No. JS–6831,* 155 Ariz. at 558, 748 P.2d at 787. Severance can be ordered only if certain safeguards are met, including proof of unfitness. *Guardianship of Mikrut,* 175 Ariz. at 547, 858 P.2d at 692; *Stewart v. Maricopa County Superior Court,* 163 Ariz. 227, 229, 787 P.2d 126, 128 (App.1989) (citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). The severing court must find by clear and convincing evidence both the statutory elements plus the best interests of the child. *Juvenile Action No. JS–500274,* 167 Ariz. at 5, 804 P.2d at 734. The best interest of the child appears to be subject to more of a balancing test, while statutory elements must be proven by clear and convincing evidence. *See JS–6831,* 155 Ariz. at 556, 558, 748 P.2d at 785, 787; *Maricopa County Juvenile Action Nos. JS–5209 and JS–4963,* 143 Ariz. 178, 189, 692 P.2d 1027, 1038 (App. 1984).

In this case, Father had been an active parent of Erin for the first seven years of her life—not the best parent, but one who played an active role until he went to prison in 1990. The facts in this record reveal that much of the actual parenting was done by Erin's half-brother, who was ten years older than Erin. Erin told the psychologist, Dr. Glenn Moe, that her Father was never a real dad to her. She had little positive feeling about him. The fact that there is now a stepfather in Erin's home who is willing, able and desires to adopt Erin cannot be overlooked and at the same time is not conclusive grounds for severance. Such a result would not comply with constitutional and statutory declarations concerning parental rights. The expert witnesses did not rely on a "home comparison" to reach their recommendation. We acknowledge the tremendous strain and difficulty with which juvenile courts are faced in deciding these cases:

> With respect to *family*—the point is, we have reduced our basic building block of society to a unit which is too small, too vulnerable, and has too little diversity in it. So, we will have to construct new units. This is what the whole community issue is about. We have to construct it, probably not on the basis of blood kinship. We need to find ways to honor independence and yet build interdependence with others. Anyone who has ever raised a child is familiar with the experience of being at cross purposes, of not understanding. It is even more so in our society because each generation has been born into a different world. We are all immigrants into the world of our children.

(emphasis in original) Dr. Mary Catherine Bateson, the Clarence J. Robinson Professor in Anthropology and English at George Mason University, Learning from Others address before the Center for the Study of Community in Albuquerque, New Mexico February 9, 1995.

A.R.S. section 8–533(B)(4) has been properly construed by the juvenile court given the facts presented in this particular case. Given the transitional age of the child at the time (from child to teenager); the evidence of a broken parent-child bond; the child's self-initiated desire to be adopted by her stepfather; the mental and emotional make-up of the child; and the stepfather's eagerness to adopt and parent the child and thus create an intact family for the child during her most difficult years compels us to hold that the juvenile court did not abuse its discretion in granting severance in this case. Adoptability of the child is one factor in considering the child's best interests. *Maricopa County Juvenile Action No. JS–501904,* 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994). We do not hold or believe that a natural parent's prison sentence of 5.25 years would necessarily mandate such a result in every case. We only hold that the result was correct given the totality of the evidence in this case.

**462**

### III. Conclusion

Because the trial court did not abuse its discretion in concluding that the evidence in this case met statutory requirements for severing parental rights, the judgment severing Father's parental rights is affirmed.

McGREGOR, J., concurs.

NOYES, Judge, dissenting.

Father's parental rights were severed because he was serving a prison sentence "of such a length that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4). The sentence was 5.25 calendar years, of which 1.5 years remained when the severance hearing began in June 1994.

No prior Arizona case comes close to holding that parental rights can be severed because of a 5.25–year sentence when the parent will be out of prison within 1.5 years of the hearing and when, prior to going to prison, the parent had a seven-year relationship with the child and was the child's residential parent. I do not discuss the cases here because the majority has done so in enough detail to make clear that those cases involve far longer sentences and far more aggravated factors than exist in this case.

The juvenile court in this case did not find that father was unfit, it did not find that father had abandoned the child, it did not find that contact with father would be harmful to the child. But the child persuaded the experts that she was genuinely adamant about being adopted by stepfather. The court found that the child was bonded with stepfather and viewed him as her father and that she was not now bonded with father and did not want to communicate with him. (The court also found some credible evidence that mother and stepfather had interfered with attempts by father to communicate with the child.) Although stepfather appears to be a better parent than father, and mother appears to be in a healthier marriage than the one she had with father, no one claims that the law allows severance on grounds that the replacement parent is of better quality than the original or that the new marriage is better than the old.

I respectfully suggest that there was far too much emphasis on adoption issues in this severance hearing. The expert testimony fo-

cused exclusively on adoption issues and the new family unit. Without the adoption advocacy and the fitness of stepfather as an adoptive parent, no one would seriously contend or conclude that father's parental rights should be severed because he had 1.5 years remaining on a 5.25–year prison sentence.

The length of father's prison sentence was not a cause of the problems in the parent-child relationship. From the new family unit's perspective, the problem with father's prison sentence was that it was too short—he would soon be out of prison and asking for visitation. On this record, any visitation-related issues should have been resolved in domestic relations court, not by severing father's parental rights.

I do not agree that Arizona law allows the social engineering that severance advocates will claim this opinion permits, despite the disclaimers in the opinion itself. I respectfully dissent.