NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RYAN H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.H., *Appellees.*

No. 1 CA-JV 16-0556
FILED 9-14-2017

Appeal from the Superior Court in Maricopa County
No. JD528168
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**S W A N N**, Judge:

**¶1**         Ryan H. ("Father") appeals the superior court's order severing his parental rights to B.H. ("Child").   We affirm because reasonable evidence supports the severance order.

### FACTS AND PROCEDURAL HISTORY

**¶2**         Child was born to Father and Amber R. ("Mother")[1] in September 2012.  From August 2013 to October 2014, the Department of Child Safety ("DCS") received multiple reports regarding the family.  The reports alleged parental domestic violence and substance abuse, lack of parental supervision, and failure to provide a clean home.

**¶3**         In October 2014, Child was removed from her parents' care when police found that Father had left Child in a hotel room littered with drugs and drug paraphernalia, in the care of a woman under the influence of drugs.  Father admitted that he too had ingested drugs, and that he had left Child unattended in a bathtub full of water.  He further admitted to a history of drug use, incarceration, and domestic violence between himself and Mother.  Father ultimately pled guilty to child abuse related to the hotel incident, and he was sentenced to prison.

**¶4**         The superior court found that Child was dependent as to Father, and ordered a case plan of family reunification.  But in February 2016, DCS moved to sever Father's parental relationship with Child under A.R.S. § 8-533(B)(8)(c).  In November 2016, the matter proceeded to a two-day evidentiary hearing.

**¶5**         The evidence presented at the severance hearing established the following.  Father remained incarcerated on the child-abuse charge until November 2015.  During that time, he sent letters to Child and he completed parenting and substance-abuse classes.  Upon Father's release from prison,

---

[1]         Mother is not a party to this appeal.

DCS offered him multiple services, including visitation, drug-testing, and domestic-violence classes.

¶6 Father attended visits with Child, though he missed some and at other times was unprepared.

¶7 Father's participation in drug-testing was inconsistent. He missed one drug test in December 2015, and he missed multiple tests throughout 2016. The testing also revealed that Father was not taking his medical marijuana and amphetamines as prescribed.

¶8 Father's progress regarding domestic violence also was inconsistent. He attended a domestic-violence course, but on multiple occasions he missed part or all of the sessions. Further, his contentious and violent relationship with Mother continued. In December 2015, police responded to a report that Father and Mother were arguing in a parking lot. In April 2016, Father disclosed to his domestic-violence class that Mother had recently physically attacked him and that it was the pair's second physical altercation since his release from prison. In May 2016, police investigated a posting made under Mother's Facebook account that included a "selfie"-style photograph of injuries to Mother's face and a statement that Father had thrown a glass picture frame at her. Later that month, police responded to a report of Mother chasing Father, and a separate report of the couple arguing. In July 2016, police responded to a report that Father had chased Mother, pushed her head into rocks, and strangled her with a towel and an electrical cord. The next month, Father and Mother were arrested together after a shoplifting incident.

¶9 A DCS supervisor assigned to Father's case testified that Child was thriving in foster care, needed stability, and was adoptable. The supervisor testified that two adoptive placements had been identified and that Child had a strong relationship with one of the potential placements.

¶10 The superior court found that DCS had proven the ground alleged for severance and that severance was in Child's best interests. Accordingly, the court severed Father's parental rights. He now appeals.

**DISCUSSION**

¶11 Father contends that DCS failed to present sufficient evidence to support termination of his parental rights. We conclude that reasonable evidence supports the severance order.

¶12        To sever a parent-child relationship, the juvenile court must find by clear and convincing evidence that at least one of the grounds set forth in A.R.S. § 8-533(B) exists, and the court must find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). We accept the court's findings of fact unless they are not supported by any reasonable evidence, and we will affirm the severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

I.      REASONABLE EVIDENCE SUPPORTS THE COURT'S FINDING THAT SEVERANCE OF FATHER'S PARENTAL RIGHTS WAS WARRANTED UNDER A.R.S. § 8-533(B)(8)(c).

¶13        Under A.R.S. § 8-533(B)(8)(c), DCS was required to prove that it made a diligent effort to provide appropriate reunification services, that Child was in court-ordered out-of-home placement for a cumulative total of at least fifteen months, that Father was unable to remedy the circumstances causing the out-of-home placement, and that it was substantially likely that Father would not be capable of exercising proper and effective parental care and control in the near future.

¶14        Father contends that DCS failed to meet its burden of proof in several respects.[2] First, Father suggests that DCS did not make a diligent effort to provide reunification services. Father states that though DCS was aware that he had ADHD and PTSD diagnoses, DCS did not offer him a psychological evaluation "to determine if any other services could have helped him with their concerns." But though DCS must "provide [a parent] the time and opportunity to participate in programs designed to help her [or him] become an effective parent," DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS declined to order a psychological evaluation because it had learned that the probation department would be conducting such an evaluation. Moreover, DCS offered Father a variety of services specifically

---

2        Though Father does not specifically challenge the "time in care" element of § 8-533(B)(8)(c), our review of the record reveals ample evidence to support a finding that Child was in an out-of-home placement for a cumulative total of more than fifteen months. DCS presented evidence that except for one month in 2015 when Child returned to Mother's care, Child remained in an out-of-home placement from October 2014 to November 2016.

designed to help him overcome domestic-violence and substance-abuse problems that impaired his ability to parent. Reasonable evidence supports the finding that DCS made a diligent effort to provide reunification services.

**¶15**      Father next contends that DCS failed to prove that he had failed to remedy the circumstances that caused Child to enter an out-of-home placement, and that he would be unable to exercise appropriate parental care and control in the near future. He asserts that he made significant efforts and progress both during and after his incarceration. But under A.R.S. § 8-533(B)(8)(c), the strength of Father's efforts was immaterial — the inquiry under that subsection of the statute focuses solely on the end result of any efforts. The relevant question is whether the circumstances at the time of the severance are such that the parent cannot appropriately provide for his or her child. *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

**¶16**      Reasonable evidence supports the conclusion that Father continued to abuse drugs. His participation in drug-testing was inconsistent, and the tests showed that he was misusing medical marijuana and amphetamines. Further, reasonable evidence supports the conclusion that Father failed to remedy his domestic-violence issues. His attendance at domestic-violence classes was inconsistent. Moreover, he continued his violent relationship with Mother. DCS presented evidence of numerous violent incidents between the two, some of which were perpetrated by Father, that occurred after his release from prison. Father points out that Mother told law enforcement that Father was not responsible for her May 2016 injuries and the July 2016 strangling incident, and that one of the two witnesses to the strangling incident was unable to identify Father in a photographic line-up. But it was for the superior court to weigh the evidence, *Jesus M.*, 203 Ariz. at 280, ¶ 4, and there was more than sufficient evidence to support the conclusion that Father continued to engage in an abusive relationship.

**¶17**      Based on the foregoing, the superior court properly found that severance was warranted under A.R.S. § 8-533(B)(8)(c).

II.    REASONABLE EVIDENCE SUPPORTS THE COURT'S FINDING THAT SEVERANCE OF FATHER'S PARENTAL RIGHTS WAS IN CHILD'S BEST INTERESTS.

**¶18**      In considering whether severance of parental rights is in a child's best interests, the court is required to determine "how the child

would benefit from a severance *or* be harmed by the continuation of the relationship," *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990), by balancing the totality of the evidence, *Maricopa Cty. Juv. Action No. JS-9104*, 183 Ariz. 455, 461 (App. 1995), *abrogated on other grounds by Kent K.*, 210 Ariz. 279. One relevant factor to the best-interests determination is whether the child would be at risk of abuse or neglect if placed in the parent's care. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 238, ¶ 27 (App. 2011); *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 80, ¶ 17 (App. 2005). Other relevant factors include whether the existing placement is meeting the child's needs, whether the child is adoptable, and whether an adoptive placement is immediately available. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010).

**¶19** Reasonable evidence supports the superior court's finding that severance of Father's parental rights was in Child's best interests. Father failed to demonstrate that he had remedied his substance-abuse and domestic-violence issues. Additionally, DCS presented evidence that Child was thriving in foster care, that Child was adoptable and needed stability, and that two potential adoptive placements — one of which had a strong relationship with Child — had been identified. Father contends that severance is not warranted because he has a bond with Child. But it was for the superior court to weigh the evidence of that bond against the other factors relevant to Child's best interests. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351–52 (App. 2013).

**CONCLUSION**

**¶20** We hold that reasonable evidence supports the superior court's severance of Father's parental relationship with Child. We therefore affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

6