NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.F. AND J.F.

No. 1 CA-JV 22-0240
FILED 2-28-2023

---

Appeal from the Superior Court in Maricopa County
No. JS20693
The Honorable Wendy S. Morton, Judge, *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellant*

Logan Mussman Law PLLC, Phoenix
By Logan Mussman
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

¶1 Mark F. ("Father") appeals the superior court's order terminating his parental rights to his children. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Rebeca N. ("Mother") and Father have two children in common, J.F. and J.F. The parties separated in 2016 and divorced two years later. The children remained with Mother, who retained sole legal decision-making authority over them. The dissolution decree required Father to pay monthly child support and granted him parenting time only if supervised by a person approved by Mother. Initially, Mother allowed various members of Father's extended family to supervise his parenting time. Mother later changed her mind, deciding that Father's parenting time must instead be supervised through a visitation center. Although Mother stopped allowing Father's family members to supervise his parenting time, she continued to allow the children to visit their paternal relatives as long as Father was not present.

¶3 For the next two and a half years, Father made no effort to schedule parenting time, had no contact with the children, and provided them no gifts, letters, cards, or support. Meanwhile, Mother remarried.

¶4 Between November 2020 and July 2021, Father paid semi-regular child support payments. In October 2021, Father hired a parenting-time supervisor who attempted to arrange a visit. Concerned that the children would not be comfortable with Father after such a prolonged period without contact, Mother told him she would require that the paternal grandmother, a familiar figure in the children's lives, be present at the visit. The paternal grandmother, who lived out of state, was unable to make the trip to Arizona, and so the visit did not occur. That same month, Mother petitioned to terminate Father's parental rights based on abandonment. A.R.S. § 8-533(B)(1).

¶5 A few months before the termination trial, Father sought an order to enforce his parenting time.

¶6 After the trial, the juvenile court issued a detailed ruling terminating Father's parental rights, and he appealed. This Court has jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

¶7 A parent's right to the custody and control of his child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of parental rights requires proof, by clear and convincing evidence, of at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Id.* at ¶ 12. Evidence is "clear and convincing" if it is "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005) (citation omitted). Termination of parental rights also requires the court to find, by a preponderance of the evidence, that termination is in the child's best interests. *Id.* at 288, ¶ 41.

¶8 "We review an order terminating a parent's relationship with his or her child . . . in the light most favorable to sustaining the superior court's ruling." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). We thus "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This Court does not "re-weigh the evidence on review," *id.* at 282, ¶ 12, but "look[s] only to determine if there is evidence to sustain the [juvenile] court's ruling," *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶9 Abandonment occurs when a parent fails to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). Abandonment is determined by reference to the parent's conduct, not the parent's subjective intent. *Michael J.*, 196 Ariz. at 249-50, ¶ 18. In making this determination, the court must consider whether the parent has maintained a normal parent-child relationship and has made more-than-minimal efforts to support and communicate with the child. *Id.*

¶10 Father does not dispute that he failed to maintain a normal parent-child relationship with the children, but he blames Mother for preventing him from doing so. *See Calvin B.*, 232 Ariz. at 297, ¶ 21 ("A parent may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment.").

¶11 The record shows, however, that Father made no effort to communicate with the children in any manner for over two and a half years. There is no evidence that Mother prevented him from contacting the children during this time. Nor did Father seek judicial enforcement of his parenting time until the eve of trial. Father's failure to take steps to maintain a relationship with the children supports the juvenile court's finding of abandonment. *See Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994) ("When . . . circumstances prevent [a parent] from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary.").

¶12 Father argues that Mother obstructed his effort to exercise parenting time in October 2021 after he arranged for a third-party supervisor by insisting that the paternal grandmother be present, too. Noting that the paternal grandmother lives out of state, Father asserts that Mother's insistence on the paternal grandmother's presence during his supervised parenting time created a "barrier[ ]" to his exercise of parenting time that he was unable to overcome.

¶13 The juvenile court found, however, that Mother did not act unreasonably on that occasion. As the court correctly noted, "[t]he decree gave Mother the authority to approve" Father's parenting-time supervisor. The court further found that Mother conditioned Father's exercise of parenting time in October 2021 on the paternal grandmother's presence

> because she did not believe that the children would be comfortable with Father, who was by that point a stranger to them. Because the supervisor was also a stranger, Mother wanted someone that the children knew and loved to be present. After such a long absence by Father, the Court finds that Mother was acting in the children's best interest and that her request was reasonable under the circumstances.

The court further observed that Father could have asked Mother to allow a family member who resides locally to be present during his parenting time instead of the paternal grandmother and that he made no such request.

¶14 The juvenile court went on to find that, even if Mother could be said to have obstructed Father's parenting time in October 2021, "Father's nine-day effort to exercise parenting time was only a minimal effort in light of the many years where Father made no effort" at all. Reasonable evidence supports the juvenile court's "abandonment"

4

determination, which this Court therefore affirms. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**¶15** Father next argues that insufficient evidence supports the juvenile court's finding that termination was in the children's best interests.

**¶16** Once the court finds at least one statutory ground for termination, the court must balance the parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. In determining the child's best interests, a court "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

**¶17** The court may find that a child would benefit from termination if an adoption plan is in place or, at a minimum, that adoption is likely, *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 371, ¶¶ 23-24 (App. 2018), and that the child "would benefit psychologically from the stability an adoption would provide," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994); *see also Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 5, ¶ 20 (2016) (affirming juvenile court's finding that termination would be in child's best interests because "making [child] adoptable" by stepfather "would affirmatively improve [child's] life" by "add[ing] permanency and stability to the de-facto father-son relationship that [s]tepfather and [child] already have").

**¶18** Conversely, the court may find a child would be harmed by the continuation of the parent-child relationship "where there is clear and convincing evidence of parental unfitness which has not been remedied . . . and which detrimentally affects the child's well-being." *Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989).

**¶19** In asserting that termination would not be in the children's best interests, Father cites Mother's admission, in her trial testimony, that the children would not be harmed if their relationship with Father continued. This assertion is unavailing, however, because termination may be in a child's best interests if continuing the parent-child relationship would harm the child *or* if termination would benefit the child. *JS-500274*,

167 Ariz. at 5. "Framed in the disjunctive, this standard permits a finding of best interests based on *either* a benefit to the child from severance *or* some harm to the child if severance is denied." *Demetrius L.*, 239 Ariz. at 4, ¶ 16 (emphasis added).

**¶20** Here, the juvenile court found that termination would benefit the children by allowing Mother's husband to adopt them. The court found that Mother's husband "has been the consistent father-figure in the children's lives," viewing them "as if they are his own biological children." The court found that "the children are thriving." Additionally, the children, who were nine and thirteen at the time of trial, expressed their wish to be adopted. The children's desire to be adopted by their stepfather further supports the juvenile court's determination that termination was in their best interests. *See Maricopa Cnty. Juv. Action No. JS-9104*, 183 Ariz. 455, 461 (App. 1995), *abrogated on other grounds by Kent K.*, 210 Ariz. at 282-88, ¶¶ 12-13, 41.

**¶21** Father contends that termination would not be in the children's best interests in view of his prior relationship with them, noting that he was present when they were born and that, prior to the parties' separation, he took the children to baseball games and on other outings. In rejecting Father's contention on this point, the juvenile court found that, although "[it] does not doubt that Father feels affection and love for the children," he no longer has a bond with them due to his prolonged absence from their lives. On the contrary, the court found Mother's husband "has been the children's only consistent father-figure since at least 2018," while "Father has not contributed to [their] stability or well-being in any meaningful or consistent way." We affirm, as supported by reasonable evidence, the juvenile court's determination that termination was in the children's best interests. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm.

