NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] L.P., *Appellees*.

No. 1 CA-JV 14-0002
FILED 07-08-2014

Appeal from the Superior Court in Maricopa County
No. JD510709
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security ("ADES") in this matter. See ARCAP 27.  For ease of reference and consistency with the record below, we refer to ADES in the text of this memorandum decision when referring to either ADES or DCS.

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

¶1        Robert P. ("Father") appeals from the juvenile court's order terminating his parental rights.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Jennifer E. ("Mother") are the biological parents of L.P., who was born in October 2011.[2]  In September 2012, Father was arrested on drug-related charges.  He was subsequently found guilty and sentenced to two and a half years in prison.  Father has been in custody continuously since September 2012 and is scheduled to be released in late March 2015, with a possible early release in August 2014.

¶3        In January 2013, ADES took L.P. into custody after police officers arrested Mother for a drug-related offense and for child neglect.  At the time, Father had been incarcerated for several months.

¶4        Father has a criminal history involving drug offenses dating back to 2006.  Father began using cocaine and marijuana when he was 15 years old, and he was addicted to heroin for approximately a year before his arrest in September 2012.  Father tried unsuccessfully to overcome his

---

[2]        The court also terminated Mother's parental rights, but she is not a party to this appeal.

heroin addiction by using prescription drug therapy to ease his withdrawal symptoms, and he participated in formal drug rehabilitation programs for five years prior to his current incarceration. Nevertheless, Father was unable to overcome his addictions, and he was unable to maintain sobriety when not in custody.

¶5            In January 2013, ADES filed a dependency petition alleging L.P. was dependent as to Father because of Father's failure to provide L.P. with the basic necessities of life due to his incarceration. Father did not contest the dependency allegations, and the court found L.P. dependent as to Father. ADES encouraged Father to participate in services offered at the prison, and Father has participated in various parenting and drug treatment classes. Father requested visitation, and ADES assisted him in arranging a few visits. Additionally, Father wrote approximately five letters to L.P.

¶6            In August 2013, ADES filed a Motion for Termination of Parent-Child Relationship alleging that the length of Father's incarceration would deprive L.P. of a normal home for a "period of years" under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4).[3]

¶7            In December 2013, after a one-day evidentiary hearing, the court found that ADES had established a basis for severance under A.R.S. § 8-533(B)(4) due to the length of Father's incarceration, and found severance to be in L.P.'s best interests. Father timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 8-235(A).

## DISCUSSION

¶8            Father argues that the evidence presented at the evidentiary hearing was insufficient to warrant severance. He also challenges the court's finding that severance was in L.P.'s best interests.

## I.        Applicable Legal Standards.

¶9            The juvenile court may terminate the parent–child relationship only if clear and convincing evidence establishes at least one statutory ground for severance. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005); *see also* A.R.S. § 8-533(B). The court must

---

[3]       Absent material revisions after the relevant date, we cite a statute's current version.

also find by a preponderance of the evidence that severance is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018; *see also* A.R.S. § 8-533(B). We review the juvenile court's severance order for an abuse of discretion, viewing the evidence in the light most favorable to sustaining the court's findings and accepting the court's factual findings unless clearly erroneous. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004); *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

**¶10** The court may terminate an incarcerated parent's parental rights "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). The length of a parent's felony sentence, by itself, is not dispositive; "[i]nstead, the juvenile court must consider the many facts and circumstances specific to each case." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 9, 53 P.3d 203, 206 (App. 2002).

**¶11** In *Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, 251–52, ¶ 29, 995 P.2d 682, 687–88 (2000), the supreme court provided further guidance regarding severance under § 8-533(B)(4):

> The trial court, in making its decision, should consider all relevant factors, including, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

## II. Reasonable Evidence Supports the Juvenile Court's Findings Regarding the Statutory Ground for Severance.

**¶12** Addressing the first *Michael J.* factor, the juvenile court concluded that Father's relationship with L.P. was not substantial before his incarceration in September 2012 due to Father's severe heroin addiction and incarceration for a substantial period of time beginning March 2012. Although Father assisted Mother in providing care for L.P. for approximately 10 months during the first year of her life, Father admitted that he was not a good parent during that time period because of

his substance abuse problem. Thus, there is clear and convincing evidence supporting the court's finding that Father's relationship with L.P. was not substantial prior to his current incarceration.

¶13 As to the second *Michael J.* factor, the court concluded that the degree to which Father can nurture his relationship with L.P. is limited because Father cannot provide L.P. with financial support, stability, shelter, or safety. Father argues that this factor does not favor severance because he has tried to nurture his relationship with L.P. in person and through correspondence. But Father's drug use prior to his incarceration impeded his ability to develop a relationship with L.P., and his current incarceration has limited his contact with L.P. during that time to five letters and approximately three visits. Thus, the juvenile court did not abuse its discretion by finding that this factor weighs in favor of severance.

¶14 As to the third *Michael J.* factor, the court concluded that L.P. is at a "tender age" of two years old and that "[Father's] incarceration deprives [her] of a normal home that she desperately needs." This factor is supported by substantial evidence, because even if Father is released in August 2014, L.P. will be almost three years old and will not have had a normal home for most of her life.

¶15 Father argues that his release from incarceration when L.P. is three years old means that she will have 15 years or the "vast majority of her childhood" to benefit from being raised by Father. But L.P. is dependent on others for her care, and she needs permanency, stability, and consistency for her development. With Father's incarceration and Mother's rights terminated, L.P. does not have a biological parent to provide a normal home for her while awaiting Father's release from prison.[4] Thus, substantial evidence supports the court's findings and conclusion as to this *Michael J.* factor.

---

[4] Even after Father is released from custody, he will not be in a position to immediately care for a child. The ADES Case Manager testified that, because of Father's history of heroin addiction and his acknowledged inability to remain sober when not incarcerated, ADES would require Father to demonstrate sobriety for at least six months after release and to participate in parenting classes, substance abuse treatment, and drug testing, and to undergo a psychological evaluation before a child would be returned to his custody.

¶16        As to the fourth *Michael J.* factor, the court concluded that Father's sentence is sufficiently long to support severance. Father's "earliest release date is [August 26, 2014] and his community supervision end date is [March 26, 2015]."[5] Father does not dispute his criminal record, his current incarceration, or his projected release dates. Instead, he argues that this factor does not support termination because his incarceration length of two and a half years is a "relatively short period, given that [L.P.] will not reach adulthood for another fifteen years." But given Father's limited relationship with L.P. for any period of her life, together with his current incarceration, substantial evidence supports the court's findings and conclusions regarding this *Michael J.* factor. *See Jesus M.*, 203 Ariz. at 281, ¶ 8, 53 P.3d at 206 ("What matters to a dependent child is the total length of time the parent is absent from the family[.]").

¶17        As to the fifth *Michael J.* factor, the court concluded that Mother is unable to provide a home for L.P. due to her parental rights being severed. Father concedes that this factor favors termination of his parental rights because there is no other parent available to provide a normal home life for L.P. during his incarceration.

¶18        As to the sixth *Michael J.* factor, the court concluded that Father's sentence is of such a length that L.P. will be deprived of a normal home for a period of years. By the time Father is released, L.P. will have been deprived of a normal home for most of her life and would continue to be deprived of such a living arrangement until Father complies with community supervision and reunification services. Father argues that this factor does not favor termination of his parental rights because he has tried to continue to nurture his relationship with L.P. through visits, letters, cards, and a gift. But given the absence of a prior significant relationship and given Father's limited ability to nurture a parent–child relationship with L.P. during his incarceration, substantial evidence supports the court's findings and conclusion as to this *Michael J.* factor. Accordingly, the trial court did not abuse its discretion by concluding that clear and convincing evidence establishes that Father's sentence is of such length that L.P. will be deprived of a normal home for a period of years.

¶19        Father argues that his participation in Arizona Department of Corrections ("ADOC") programs and his plans for success upon release

---

[5]        The court's written findings reflect Father's community supervision end date as March 26, 2014, which appears to be a typographical error; Exhibit 11 lists the end date as March 26, 2015.

are other relevant factors that should have been considered. But the court acknowledged Father's participation in ADOC-offered programs, finding that Father "has taken advantage of numerous programs in [ADOC], including Positive Parenting Treatment, Prison Fellowship's Re-entry Program, Back to Basics, and Narcotics/Alcohol Anonymous." The court also found, however, that "even upon his release from [ADOC], [Father] would have to comply with his community supervision and ADES services," which would cause L.P. to continue to be deprived of a normal home for additional time. Accordingly, the court considered the factors Father cites, including his efforts to maintain a relationship with L.P., but nevertheless concluded that severance was warranted under the circumstances presented here.

¶20         Because clear and convincing evidence supports the court's findings, the court did not abuse its discretion by finding that ADES established a statutory basis for severing Father's parental rights to L.P.

## III.    Reasonable Evidence Supports the Juvenile Court's Finding That Severance Is in L.P.'s Best Interests.

¶21         Father argues that the juvenile court's best interests finding is not supported by the evidence because the proposed adoption plan would not benefit L.P. We conclude otherwise.

¶22         To determine whether severance is in the best interests of a child, the court balances the parent's rights against the child's rights. *Kent K.*, 210 Ariz. at 287, ¶ 37, 110 P.3d at 1021. Termination of the parent–child relationship is in the child's best interests if the child would be harmed if the relationship continues or would benefit from termination. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19, 83 P.3d at 50. Factors to consider include (1) whether an adoptive placement is immediately available, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998), (2) whether the current placement is meeting the child's needs, *id.*, and (3) whether the child is adoptable. *See Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

¶23         The juvenile court made the following finding regarding a possible adoption plan:

> Termination of [Father's] rights would benefit the child because it will allow the child to gain permanency through adoption. Termination of [Father's] parental rights would further the plan of adoption. The child is residing with her maternal great aunt who is committed to adopting her. The

maternal great aunt can provide the child with all of her physical, emotional, educational, medical and social needs. The child is adoptable. The child's current placement is the least restrictive consistent with the needs of the child.

**¶24**    The evidence supports this finding. The ADES Case Manager testified that L.P.'s placement with her maternal great aunt provides L.P. with a secure environment where L.P. has flourished, and L.P. has bonded with her foster parent. The current placement meets all of L.P.'s social, educational, and emotional needs, and L.P.'s maternal great aunt is willing to adopt her. Thus, because severance of Father's parental rights will allow L.P. to be adopted into a permanent and stable home where her needs are met, the juvenile court did not did not abuse its discretion by finding that severance is in L.P.'s best interests. *See James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, 972 P.2d 684, 689 (App. 1998).

**CONCLUSION**

**¶25**    For the foregoing reasons, we affirm the juvenile court's termination of Father's parental rights to L.P.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

8