833 P.2d 721

**In the Matter of the APPEAL IN YUMA COUNTY J–88–201, J–88–202, J–88–203.**

**No. 1 CA–JV 92–0016.**

Court of Appeals of Arizona, Division 1, Department A.

July 7, 1992.

Weil & Nelson by John Nelson, Yuma, for ADES.

Robert C. Clarke, Yuma, for Mother.

Bruce Yancey, Yuma, for Minor Children.

OPINION

GRANT, Judge.

This appeal arises from a proceeding to terminate the parental rights of the natural mother of three children under the age of ten. The Arizona Department of Economic Security ("DES") appeals from the trial court's denial of the petition to terminate the mother's parental rights.[1]

## FACTS AND PROCEDURAL HISTORY

The trial court's decision followed a three day trial. Testimony at trial showed that several referrals alleging potential abuse and neglect had come to DES regarding the mother and her children beginning as early as 1986. In April of 1988, DES began an in-home intervention program, providing parent training, transportation, monitoring and other services to the mother and her children.

In May of 1988 the mother was evaluated by Dr. Ashley Hart, a psychologist, at the request of DES. Dr. Hart concluded that the mother suffered from a dependent personality disorder as well as organic brain dysfunction, commonly known as mild mental retardation. Dr. Hart recommended further neuro-psychological testing, which was completed by Dr. Darrell Shutt. Dr. Shutt reached the same conclusions as Dr. Hart.

Based on the results of his testing, Dr. Hart concluded that the mother could not effectively care for her children. Moreover, he "did not think that she would benefit from intervention [and] it would be very difficult to make significant changes in her ability to parent."

Between April and August of 1988 DES provided constant, daily services to the mother. The situation in the home did not improve. The children needed significant medical attention and daily care for their basic needs. The mother could not meet the children's needs, either through inability or unwillingness or both. In October of 1988 DES removed the children from the home and placed them in foster care.

---

1. The parental rights of the fathers of the children were terminated during the proceedings below, but the fathers have not appealed those decisions and are not parties to this appeal.

During 1989 DES implemented a program of observational visitation between the mother and the children. These meetings were monitored by Ruth Gagnon, a family psychotherapist. Individual counseling sessions with the mother were also scheduled. The mother often did not show up for pre-scheduled visits with the children. Ms. Gagnon testified at trial that the visits were counterproductive and eventually harmful to the children. She opined, based on her observations, that the mother did not possess the minimal child rearing skills necessary to properly care for her children and that these skills could not be developed in the mother because the mother did not possess the mental and emotional capacity to learn to care for the children.

The DES caseworker assigned to this case also testified at trial. She reviewed the programs and services provided to the mother from the time of active DES intervention until the time of the filing of the petition to terminate parental rights. These services included: parental skills training, in and out of the home, in areas such as budgeting, shopping, discipline and parent-child interaction; helping the mother provide for the educational and medical needs of the children; transportation to doctor's appointments and other scheduled appointments; vocational rehabilitation training; and assistance in applying for and utilizing community resources such as HUD, social security, job training and Health Department benefits.

The caseworker testified that the mother often refused to participate in counseling and psychological evaluations, and that the mother often missed staffing, planning and implementation meetings with DES workers. The caseworker concluded that, because of uncooperativeness or mental and emotional deficiencies, or both, the mother would not be able to effectively care for her children in the future.

The mother also testified at trial. She told the court that the primary causes of her deficiencies as a parent were due to poverty and a lack of transportation. She also testified that many DES efforts on her behalf were unsuccessful due to personali-ty conflicts between herself and DES caseworkers and parent aides. She stated that she had refused further psychological testing, even after the court ordered her to undergo the testing, because she felt that it was unnecessary. She felt that she could handle her child rearing responsibilities in the future, although she admitted she would need significant help.

The petition to terminate parental rights was filed after DES had been actively engaged with the case for three years and after the children had been in foster care for more than two years. The state alleged statutory grounds for termination pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") sections 8–533(B)(3) and (B)(6), which read as follows:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

\* \* \* \* \* \*

3. That the parent is unable to discharge the parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

\* \* \* \* \* \*

6. That the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate remedial services and that either of the following circumstances exists:

(a) The child has been in an out-of-home placement for a cumulative total period of one year or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances which cause the child to be in out-of-home placement.

(b) The child has been in an out-of-home placement for a cumulative total period

of two years or longer pursuant to court order, the parent has been unable to remedy the circumstances which cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

After hearing the testimony and reviewing the case file, the court denied the petition, stating as follows:

Unless the state is willing to dedicate sufficient resources to provide this lady with parenting assistance for several hours each day, week and month; to dedicate sufficient resources to train her to accomplish certain necessary parenting tasks on a timely and consistent basis and to provide the necessary continuum of assistance, watchfulness and care to assure itself that the children are not harmed by the unwitting inability of this parent, then this court is most clearly convinced that the needs of the children mandate the severance.

This court is not convinced that the state has made its "best" effort to avoid this severance. The court is aware that it is a difficult task to assist this lady, and that such an effort over a long period is frustrating. Frustration in turn brings on a sense of futility and failure. This is the aura which surrounds this case. Initially, a great many resources, time, effort and money, were directed toward this case and the parties. As time went on frustration set in and the resources were slowly withdrawn so that now we are left with the shells of the former feast. . . .

This court is clearly convinced that [the mother] has a substantial and continuing mental deficiency, and that without substantial and continuous, daily assistance cannot adequately parent the children above. The court is, likewise, clearly convinced that we have not yet provided our best effort to avoid this severance.

2. We note that the trial court's finding that the statutory grounds had been met, standing alone, would require reversal of the denial of the peti-

## DISCUSSION

On appeal from a decision regarding a petition to terminate parental rights, the trial court's findings will be upheld unless they are clearly erroneous. *Appeal in Pima County Severance Action No. S–2397*, 161 Ariz. 574, 577, 780 P.2d 407, 410 (App.1989). The conditions warranting severance must be proven by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). By statute, termination may not be granted unless DES "has made a diligent effort to provide appropriate remedial services." A.R.S. § 8–533(B)(6).

The statutory prerequisites to termination of parental rights create an affirmative duty on the part of DES to make all efforts to preserve the family relationship. *Appeal in Maricopa County Juv. Action No. JS–6520*, 157 Ariz. 238, 241, 756 P.2d 335, 338 (App.1988). We have held that termination pursuant to section 8–533(B)(6) should be granted only if the court finds, by clear and convincing evidence, that DES has made a concerted and diligent effort to preserve the family relationship. *Id.* at 241, 756 P.2d at 338; *see Appeal in Yavapai County Juv. Action No. J–9956*, 169 Ariz. 178, 180, 818 P.2d 163, 165 (App. 1991). However, it is by now well-established that "DES has no such obligation if efforts to reunify the family would be futile." *Yavapai County Action No. J–9956*, 169 Ariz. at 180, 818 P.2d at 165; *see Appeal in Pinal County Juv. Action No. S–389*, 151 Ariz. 564, 567, 729 P.2d 918, 921 (App.1986); *Appeal in Maricopa County Juv. Action Nos. JS–5209 and JS–4963*, 143 Ariz. 178, 189, 692 P.2d 1027, 1038 (App.1984).

In the present case, the court found that the state had proved the statutory grounds for termination by clear and convincing evidence. The trial court further found, however, that DES had not satisfied its obligation to use diligent efforts to preserve or reunify the family.[2] After a thor-

tion. This is so because A.R.S. § 8–533(B)(3) does not include language requiring that DES make "diligent efforts" to reunify the family.

ough review of the record, we conclude that this finding was contrary to the evidence presented at trial and thus clearly erroneous. The testimony showed that DES provided the mother with daily supervision and training immediately following the agency's decision to intervene in the family relationship. Parent aides and caseworkers spent tireless hours with the mother for many weeks and months, hoping to give her the skills necessary to independently care for her children. The caseworkers saw no improvement.

The DES workers' evaluation of the situation was substantiated by psychiatrists and therapists who worked with the mother and the children in an effort to assess her abilities as a parent. During the early stages of the case, these experts concluded that the mother's physiological and emotional disorders left little room for hope that her child rearing capabilities would improve over time. The mother was re-evaluated on a continuing basis following supervised visits and counseling sessions. The testimony showed that the mother was recalcitrant at times, refusing to cooperate and follow through with planned efforts to establish family relationships. Finally, the experts concluded that continued attempts to reunite mother and children would be detrimental to the children, who were thriving in their foster home environment.

Our reading of the trial court's decision leads us to conclude that the court applied the wrong legal standard to DES's efforts. The court found that DES had not made its "best" efforts, whereas the statute speaks in terms of "diligent" efforts. We believe that a "best efforts" standard would be impossible to define and equally impossible to fulfill.

Under the proper standard, the trial court erred in finding that DES had not satisfied its duty to attempt reunification of this family. The decision to seek termination of the mother's parental rights followed prolonged, painstaking, yet futile efforts by DES to reunite the family. The

record shows that these efforts would likewise be futile in the future. The termination was not sought simply to avoid the expense and time involved in continued assistance. *Cf. Maricopa County Action No. JS–6520,* 157 Ariz. at 246, 756 P.2d at 343 ("termination of parental rights ... must serve more than a casework goal").

### CONCLUSION

The order of the trial court denying the petition to terminate the mother's parental rights is reversed. The case is remanded to the trial court with directions to enter an order consistent with this opinion.

CONTRERAS, P.J., and GERBER, J., concur.

However, the state alleged that termination was proper under either § 8–533(B)(3) or § 8–533(B)(6). Since the court's findings do not specify which statutory section formed the basis

of the decision, and because the court denied the petition based solely on the "diligent efforts" issue, we address the arguments raised by appellants in this appeal.