972 P.2d 684

**JAMES S., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY and Krystal S., Appellees.**

No. 1 CA–JV 98–0001.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 6, 1998.

Review Denied Feb. 23, 1999.

A. Douglas LaSota & Associates, P.C. by A. Douglas LaSota, Phoenix, for Appellant Father.

Theut, Theut, & Theut, P.C. by Brian J. Theut, Phoenix, for Appellee Child.

Grant Woods, Attorney General by Michelle Allen Flemming, Assistant Attorney General, Phoenix, for Appellee ADES.

## OPINION

PATTERSON, Judge.

¶ 1 James S. (father) appeals the juvenile court's termination of the parent-child relationship between himself and his child. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Krystal S. (the child) was born on April 25, 1995. Father began serving a 5.5 year prison sentence on November 11, 1995. Child Protective Services (CPS) removed the child from her mother's care on May 1, 1996, due to the mother's neglect and drug use.

¶ 3 On April 22, 1997, the Arizona Department of Economic Security (ADES) filed a petition to terminate the parent-child relationship between the father and the child

under Arizona Revised Statutes Annotated (A.R.S.) section 8–533(B) (best interest of child).[1] In addition to alleging that severance of father's parental rights would be in the best interest of the child, the petition alleged A.R.S. section 8–533(B)(4) (felony conviction) as grounds for terminating father's rights. ADES alleged that the sentence for father's felony conviction was of such a length as to deprive the child of a normal home for a number of years.

¶ 4 At the hearing on the petition for termination, father testified that he lived with the child and her mother from the date of the child's birth until his incarceration approximately six months later. He testified that, while the mother was the child's primary caretaker, he spent about half of the day with the child. He further testified that he had established a bonded relationship with the child during that time.

¶ 5 Father also testified that, during the six months he was with the child, he used drugs and alcohol on a daily basis. More specifically, father testified that he drank a case of beer per day, used marijuana daily and used cocaine weekly. The caseworker, who was qualified without objection as an expert witness, testified that the child could not have bonded with father during the short time they were together given the father's drug and alcohol abuse.

¶ 6 Father's anticipated date of release to community supervision is June 14, 2001. The child will be six years old at that time.

¶ 7 The child and her half sister have been placed with a relative. The relative is seeking to adopt both of them. Further, the CPS caseworker testified that adoption by this relative placement was in the child's best interest and denial of the petition for termination would cause the child to suffer. More specifically, the caseworker testified that the child would benefit from severance because adoption would give the child the feeling of being part of a family that a young child

requires. Additionally, the caseworker testified that failure of the court to grant the severance would be detrimental to the child's best interest because the father's incarceration has made him unable to bond with the child. The child does not know her father.

¶ 8 The juvenile court found:

7. JAMES [ … ] [ … ] aka JAMES [ … ] is deprived of his civil liberties due to the conviction of a felony. The father's sentence is of such length that the children (sic) will be deprived of a normal home for a period of years.

8. JAMES [ … ] [ … ] aka JAMES [ … ] is currently incarcerated. His sentence end date is in the year 2001.

. . . .

11. JAMES [ … ] [ … ] aka JAMES [ … ] cannot meet KRYSTAL [ … ] [ … .'s] basic needs, including medical, social and educational needs. Further, Mr. [ … ] cannot provide—either now or in the near future—a home which would provide a safe, nurturing, and emotionally stable environment.

12. **The Court further finds** that Severance would be in the child's best interest and welfare.

To support the best interest finding, the court found that: 1) the placement with a relative was "very positive"; 2) no anticipated barriers existed to adoption certification of the relative; 3) if there was no severance the child would suffer detrimental consequences because she has not bonded with the father; 4) the child has bonded with her relative; 5) the child is currently placed with her half sibling, with whom she has an ongoing relationship; 6) the child is adoptable; and 7) a social study prepared by Joan Drydyk, a severance specialist, supported severance and adoption as in the child's best interest.

¶ 9 The juvenile court granted the petition for termination and father appeals from

---

1. The petition also alleged grounds of abandonment and out-of-home placement for terminating the mother's parental rights to the child. A.R.S. § 8–533(B)(1) and (7). The juvenile court terminated the mother's rights on March 30, 1998. However, the issue of the mother's termination is not before this court. The petition also alleged the termination of John Doe as the child's alleged father. Before the hearing, a paternity test established that appellant is the child's biological father and thus, the allegations pertaining to John Doe were dismissed from the petition.

that ruling. We have jurisdiction pursuant to A.R.S. section 8–236.

## DISCUSSION

■ ¶ 10 The conditions warranting severance of the parent-child relationship must be proven by clear and convincing evidence. *In re Yuma County J–88–201*, 172 Ariz. 50, 53, 833 P.2d 721, 724 (App.1992) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). On appeal, we accept the juvenile court's findings of fact in support of severance unless they are clearly erroneous. *Maricopa County Juv. Action No. JS–501568*, 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App.1994). We will affirm the juvenile court's ruling where sufficient evidence exists to support its findings. *Pima County Juv. Action No. S–949*, 134 Ariz. 442, 443, 657 P.2d 430, 431 (App.1982).

¶ 11 Father argues that the juvenile court abused its discretion in granting ADES's petition for termination of the parent-child relationship under A.R.S. section 8–533. Specifically, father argues that the trial court erred because ADES failed to prove by clear and convincing evidence the statutory grounds for termination in A.R.S. section 8–533(B)(4).[2]

¶ 12 Father further argues that the length of incarceration cannot be the sole cause for termination.[3] For this proposition, father cites to a Division Two case, *Pima County Juvenile Action No. S–624*, 126 Ariz. 488, 616 P.2d 948 (App.1980). However, Division Two of this court did not refer to A.R.S. section 8–533(B)(4) but instead relied on case law that preexisted the statute.

**2.** Father's brief also argues that ADES failed to prove statutory grounds under A.R.S. section 8–533(B)(1) (abandonment). However, as appellees note in their responsive brief, abandonment as to father was not alleged. Nor did the juvenile court consider abandonment in making its decision to terminate father's parental rights. Thus, we do not address the issue of abandonment in this decision.

**3.** The parties dispute whether the court should consider the year father is expected to be released from prison and placed on community supervision (June 14, 2000–June 14, 2001). Under A.R.S. section 8–533(B)(4), the court must consider the entire length of the sentence and not

■ ¶ 13 We agree with father that the juvenile court must consider more than just the conviction and length of sentence. In every case, the juvenile court must also consider the best interest of the child. A.R.S. § 8–533(B); *Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990). However, in addition to best interest, the court need only find one of the factors enumerated in A.R.S. section 8–533(B) to terminate parental rights. *Maricopa County Juv. Action No. JA–33794*, 171 Ariz. 90, 92, 828 P.2d 1231, 1233 (App.1991) ("Section 8–533 permits termination of the parent-child relationship only if the trial court finds that at least one of those grounds enumerated in the statute applies.").

¶ 14 The juvenile court relied on A.R.S. section 8–533(B)(4) in terminating father's parental rights. That statute provides in relevant part:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court shall also consider *the availability of reunification services to the parent and the participation of the parent in these services and* the best interests of the child:

. . . .

4. That the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of such parent is of such length that the child will be deprived of a normal home for a period of years.

(Emphasis added).[4] This section does not specify any certain amount of time for the

whether the parent may be parole eligible within that time. *Maricopa County Juvenile Action No. JS–5609*, 149 Ariz. 573, 575, 720 P.2d 548, 550 (App.1986) ("whether respondent may or may not make parole is irrelevant"). Thus, the juvenile court properly used the 2001 date as the end of father's sentence.

**4.** We note that the emphasized language was added by the legislature in 1997 by chapter 222, section 49 of the Arizona Session Laws. The change became effective on July 21, 1997—after the filing date of the petition, but before the hearing. Thus, it appears the new language applies. However, the new language does not place a duty on ADES to provide reunification

sentence. Instead, the juvenile court must determine that the length is such "that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4). The father's attempt to rely on previous case law fails because the juvenile court's analysis is necessarily fact specific. *See Maricopa County Juv. Action No. JS–9104*, 183 Ariz. 455, 460, 904 P.2d 1279, 1284 (App.1995) (trial court must look at many factors in a severance proceeding). Whether a parent's sentence for a felony conviction deprives a child of a normal home will vary depending on the facts of each case. *Id.* (limiting its holding to the facts of the case).

¶ 15 Father attempts to distinguish the only Arizona case to affirm the termination of parental rights with a sentence of five years. *Action No. JS–9104*, 183 Ariz. at 459, 904 P.2d at 1283.[5] However, the evidence in this case more strongly favors severance than the evidence in *Action No. JS–9104*. In *Action No. JS–9104*, the father and daughter had had much more time to develop a bonded relationship than in the instant case. Specifically, the father in *Action No. JS–9104* had a seven-year relationship with his daughter before his arrest for sale of cocaine. *Id.* at 457, 904 P.2d at 1281. Here, the father and child were together for only six months before father was arrested and sentenced to a 5.5 year prison term. He had more than three years remaining in prison at the time of

severance. In *Action No. JS–9104*, the appellate court looked to the evidence presented by the parties regarding the potential for the child to be deprived of a normal home in determining whether the juvenile court's findings were clearly erroneous. *Id.* at 460, 904 P.2d at 1284. We must do the same.

¶ 16 We find the juvenile court's findings were supported by clear and convincing evidence and thus, were not clearly erroneous. First, the child was only six months old when father was arrested. The caseworker testified that, because of the child's young age, it is unlikely she was bonded to father. The child will be six years old when father's sentence expires. Second, father testified that he was bonded to the child in the six months before his arrest. However, father also testified that while he was bonding with the child, he was using drugs and alcohol on a daily basis. The CPS caseworker's long employment history in and familiarity with substance abuse rehabilitation, along with her expertise as a social worker, enabled her to testify that father could not have established any type of relationship with his daughter in those six months because of his drug and alcohol abuse.

¶ 17 Based on these facts, the juvenile court found by clear and convincing evidence that the father's 5.5 year sentence was of such a length as to deprive the child of a

---

services, it only requires the court to consider the availability of such services. Reunification services are not available in all severance situations. For example, in an abandonment proceeding, services would not be available because the parent was absent. The cause of the severance in this case is the length of appellant's sentence. This condition cannot be remedied by reunification services.

Further, the legislature has since removed the newly-added language from subsection B and placed it in a new subsection C, limiting the language to severances under A.R.S. section 8–533(B)(7) and (10) (time in care). Act of Aug. 21, 1998, ch. 276, § 13, 1998 Ariz. Sess. Laws. This indicates the legislature's original intent to require the court to consider the availability of reunification services only where relevant, i.e., in cases where severance is sought because the child has spent a certain amount of time in care.

5. Several Arizona cases have relied on A.R.S. section 8–533(B)(4) to sever a parent's rights. *See, e.g., Maricopa County Juv. Action No. JS–7499*, 163 Ariz. 153, 159, 786 P.2d 1004, 1010

(App.1989) (affirming severance where father sought reversal of severance because conviction for murdering the children's mother had been reversed); *Maricopa County Juv. Action No. JS–5609*, 149 Ariz. 573, 720 P.2d 548 (App.1986) (affirming severance of father sentenced to nine-year prison term for sexual assault of senior citizen when child was one-year old when father went to prison); *Pima County Juv. Action No. S–1147*, 135 Ariz. 184, 659 P.2d 1329 (App.1983) (affirming severance of father serving life sentence for second degree murder); *Action No. S–949*, 134 Ariz. at 443, 657 P.2d at 431 (affirming severance of father sentenced to twelve years for various sex crimes on unfitness grounds); *Pima County Juv. Action Nos. S–826 and J–59015*, 132 Ariz. 33, 643 P.2d 736 (App.1982) (clerical modification by *Juvenile Action No. S–1147*, 135 Ariz. 184, 185, 659 P.2d 1329, 1330 (App.1983)) (affirming severance based on unfitness because father convicted of rape and sodomy of nine-year old child).

normal home. We find that sufficient evidence existed to support the juvenile court's conclusion.

¶18 Additionally, the record supports the juvenile court's finding that termination is in the child's best interest. To establish that termination is in the child's best interest, the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the relationship. *Action No. JS-500274*, 167 Ariz. at 5, 804 P.2d at 734. Evidence of an existing adoption plan can be considered a benefit to the child. *Id.* at 6–7, 804 P.2d at 735–36; *see also, Maricopa County Juv. Action No. JS-6520*, 157 Ariz. 238, 243, 756 P.2d 335, 340 (App.1988) ("[child] is in a fost-adopt home; it is therefore in his best interests that the parent-child relationship be severed so that he may be freed for adoption.")[6]; *cf. Maricopa County Juv. Action No. JS-6831*, 155 Ariz. 556, 559, 748 P.2d 785, 788 (App.1988) (affirming denial of termination where no benefit to child shown because no potential adoption of children). Thus, while an adoption plan may not be necessary for termination, it is evidence of a benefit to the child. *Pima County Juv. Action No. S-2460*, 162 Ariz. 156, 158, 781 P.2d 634, 636 (App.1989) ("The immediate availability of an adoptive placement obviously weighs in favor of severance, while the improbability of adoption, absent other factors, weighs against it."). Further, the stated legislative purpose for A.R.S. § 8–533 is "to expedite the adoption of numerous children who remain in temporary foster care for indeterminate lengths of time with no hope of being returned to their natural parents and, in so doing, promote a stable and long-term family environment for these children." Act of 1986, ch. 205, § 1, 1986 Ariz. Sess. Laws.

¶19 In this case, the testimony demonstrates that the child is bonded to her current family and to force her to have a relationship with her biological father after such a long absence would be detrimental to her. Further, the child is placed in an adoptive home, along with her half-sibling, with whom she has bonded. The caseworker testified that no barriers exist to this adoption plan. The caseworker also testified that the permanency of adoption would serve the child's best interest.

¶20 Thus, the juvenile court had sufficient evidence to support its conclusion that termination would be in the child's best interest.

### CONCLUSION

¶21 For the foregoing reasons, we affirm the judgment of the trial court terminating the parent-child relationship between the child and father. The child's best interests are served by the severance order.

VOSS and FIDEL, JJ., concur.

---

6. The court in this case reversed the severance as to the two older siblings because they were not in an adoptive home. *Id.* at 244, 756 P.2d at 341.