NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VINCENT G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.G.[1], *Appellees*.

No. 1 CA-JV 18-0110
FILED 8-23-2018

Appeal from the Superior Court in Maricopa County
No.  JD 32663
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

[1]     Appellee A.O. is not a party to this appeal. It is therefore ordered amending the caption as reflected in this decision. The above referenced caption shall be used on all further documents filed in this appeal.

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge David D. Weinzweig joined.

---

**C A M P B E L L**, Judge:

¶1          Vincent G. ("Father") appeals the termination of his parental rights to his child, C.G. ("Child"). He argues the superior court erred by finding sufficient evidence to justify termination based on three statutory grounds—abandonment, nine months' out-of-home placement, and fifteen months' out-of-home placement—and by finding termination was in the Child's best interests. We are unpersuaded by Father's arguments and affirm the court's termination order based on the ground of abandonment.[2]

### FACTS AND PROCEDURAL BACKGROUND

¶2          Before the birth of his Child, Father was arrested and charged with two counts of sexual abuse. Father pled guilty to attempted sexual abuse and was placed on supervised probation for 10 years. The court required Father to abide by special conditions of probation as a sex offender, including requiring prior approval before having contact with any children, even relatives. Father's probation officer indicated the restrictions could be lifted, but only if Father completed a course of treatment and risk assessments.

¶3          Mother gave birth to Child in January 2016.[3] Several months later, the Department of Child Safety took custody of the Child and filed a dependency petition alleging Father had neglected Child by failing to establish paternity, providing no support, and that his whereabouts were unknown. DCS unsuccessfully tried to locate Father and eventually placed Child with paternal grandmother.

---

[2]     Because we affirm the superior court's termination order on the ground of abandonment, we need not address Father's contentions with the additional grounds found by the court of both nine and fifteen months' out-of-home placement. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

[3]     Mother is not a party to this appeal.

¶4 In August 2016, DCS learned that Father had participated in a paternity test a month earlier, the results of which indicated that he was Child's biological father. In September, a DCS case manager informed Father he must begin various services before he would be permitted to contact his Child. At a mediation in November, Father agreed to participate in substance-abuse testing, parent-aide services, and parenting classes, and agreed to visitation with his Child "[a]t DCS discretion[] [and] in conjunction with [the] terms of [his] probation." Shortly thereafter, the court found the Child dependent as to Father and set the case plan as family reunification, but Father ultimately failed to fully follow through on his treatments and assessments, *infra* ¶ 12.

¶5 After the Child had been in care for over 10 months, DCS moved to terminate Father's parental rights, alleging both abandonment and Father's refusal to remedy the circumstances causing his Child to be in an out-of-home placement. At the initial termination hearing in May 2017, Father denied the allegations, and the court ordered DCS to refer Father for parenting and domestic-violence classes.

¶6 By the time of the termination hearing in February 2018, the Child had been out of the home for 21 months and Father had still never met her. DCS presented evidence that Child's placement was meeting all of her needs and that her paternal grandmother was willing to adopt Child. After considering the evidence presented, the superior court issued an order terminating Father's parental rights to his Child.

**DISCUSSION**

¶7 As the trier of fact in a termination proceeding, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). We therefore view the evidence and all reasonable inferences in the light most favorable to affirming the superior court's order, *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002), and will reverse only if no reasonable evidence supports its factual findings, *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 16 (App. 2016). To terminate parental rights, the superior court must find at least one statutory ground under Arizona Revised Statutes ("A.R.S.") § 8-533 by clear and convincing evidence, A.R.S. § 8-537(B), and find by a preponderance of the evidence that termination is in a child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).

## I.     Abandonment

¶8          A parent abandoning a child is evidence sufficient to justify termination of the parent-child relationship. A.R.S. § 8-533(B)(1). Under A.R.S. § 8-531(1), the ground of abandonment requires multiple findings, including that a parent has failed to provide reasonable support, maintain regular contact, and provide normal supervision:

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a **parent has made only minimal efforts to support and communicate** with the child. Failure to maintain a normal parental relationship with the child **without just cause** for a period of six months constitutes prima facie evidence of abandonment.

(Emphasis added). Questions of abandonment are questions of fact to be resolved by the superior court. *Matter of Appeal in Maricopa County Juvenile Action No. JS-500274*, 167 Ariz. 1, 4 (1990). The court's determinations concerning reasonable support, regular contact, and normal supervision "will depend on the circumstances of the particular case." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 19 (App. 2010). Abandonment is not measured by a parent's subjective intent, but rather by the parent's conduct. *Michael J.*, 196 Ariz. at 249-50, ¶ 18.

¶9          The superior court found that Father had abandoned his Child by failing to maintain a normal parental relationship, without just cause, and made all three of the findings below. First, the court found that Father failed to provide reasonable support. While Father claims he did help provide the placement with financial assistance, he produced no documentation to that effect. Next, the court found he failed to maintain regular contact, noting he had sent no cards, gifts, or letters. Finally, the court found Father had failed to provide normal supervision, pointing out that he had made no contact whatsoever with his Child. Father argues that he could neither maintain regular contact nor provide normal supervision, however, because the terms of his probation prevented him from doing so — constituting just cause for his failure to maintain a normal parent-child relationship.

¶10          When circumstances prevent a parent "from exercising traditional methods of bonding with his Child, he must act persistently to establish the relationship however possible and must vigorously assert his

legal rights to the extent necessary." *Matter of Appeal in Pima County Juvenile Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994); *see also Michael J.*, 196 Ariz. at 251, ¶ 25 ("The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity.").

¶11        Father's initial probation terms prevented him from contacting his Child, but Father was aware that this restriction could be lifted if he completed certain items of treatment and assessments, *supra* ¶ 2. Father, however, neither acted persistently to complete these requirements nor vigorously asserted his legal rights to Child; rather, Father made only minimal efforts to alter the terms of his probation so that he could communicate with his Child.

¶12        Father has never met his Child. Although she was removed from Mother's custody in May 2016, Father waited until July to take a paternity test and was not in contact with DCS until September. *Supra* ¶¶ 3-4. Further, Father testified at trial that he was only about "40 percent complete" with his assigned sex offender treatment. Father also testified that he was aware he needed to pass polygraph tests related to his sex-offender treatment before his probation officer would discuss contact with his Child. Father, however, attempted a polygraph test only once—in July 2017—and did not pass it. Additionally, DCS referred Father to domestic-violence counseling in June 2017, but Father did not begin to attend until over six months later.

¶13        Reasonable evidence supports the superior court's finding that Father abandoned his Child, and we affirm the termination of Father's parental rights under A.R.S. § 8-533(B)(1).

## II.    Best Interests

¶14        Father argues the superior court had insufficient evidence to find that termination was in his Child's best interests. To establish that termination is in the best interests of a child, the superior court must find "either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998). "Evidence of an existing adoption plan can be considered a benefit to the child." *Id.*

¶15        Here, the record indicates that the Child was placed in the home of her paternal grandmother, *supra* ¶ 3, and that the placement was meeting all of her needs. Her grandmother was willing to adopt her and she was otherwise adoptable. Thus, there was reasonable evidence supporting the superior court's finding that termination would benefit the

Child by "further[ing] the plan of adoption" and providing her "with permanency and stability." We find no error in the superior court's finding that termination was in the Child's best interests.

**CONCLUSION**

**¶16**          Because the superior court had reasonable evidence to find that Father had abandoned his Child and that termination was in her best interests, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA