NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHARECE N., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.F., R.F., *Appellees.*

No. 1 CA-JV 18-0473
FILED 6-11-2019

Appeal from the Superior Court in Maricopa County
No. JD31837
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Diane M. Johnsen joined.

---

**W I N T H R O P**, Judge:

¶1   Sharece N. ("Mother") appeals the juvenile court's order terminating her parental rights to child R.F.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2   R.F. was born in 2006, and she is the youngest of Mother's three children.  The Department of Child Safety ("DCS") first became involved with the family when all three children were removed from the home due to allegations that Mother had failed to protect R.F. and her older sister (J.F.) from sexual abuse by Mother's boyfriend.  R.F. told relatives that Mother's boyfriend once performed oral sex on her while she was in the bathroom, and her sister reported the boyfriend once got in her bed while he was intoxicated and naked and touched her breasts.  The children's aunt and grandmother tried to help them tell Mother about the abuse, but "[Mother] became angry, insisted that the girls were lying, and refused to listen."

¶3   The aunt then called the police in October 2015 to report the children's statements.  Both girls completed forensic interviews in November 2015 and repeated their allegations.  R.F.'s sister stated she did not feel that she and R.F. were safe at home.  In December 2015, DCS took all three children into custody and filed a dependency petition alleging Mother had failed to protect R.F. and her older sister from sexual abuse by Mother's boyfriend.[1]  The girls then completed a second forensic interview. At that time, however, they began to make inconsistent statements about the abuse. Specifically, R.F. asserted that the boyfriend did not touch her in the bathroom and that she had lied because "she was mad at her mom for not spending time with her."  Yet later in the same interview, R.F. stated that she was "mad about what [boyfriend] had done to her" and about

---

[1]  Mother contested the allegations in the petition, and a dependency hearing was held in August 2016.

Mother not standing up for her and instead choosing to "stick up" for the boyfriend. R.F.'s sister stated the incident was an accident and she had begun locking the bedroom door so that the "accident" would not happen again.

¶4 Throughout the dependency process, both girls attempted to talk to Mother about the abuse, but Mother refused to listen. At the dependency hearings, Mother asserted the incident with R.F.'s sister was an accident and the boyfriend got into the wrong bed because he was intoxicated. Mother also stated that R.F. was lying because the boyfriend had broken his leg and was incapacitated at the time of the alleged abuse. The juvenile court adjudicated all three children dependent in August 2016.

¶5 As part of the proposed plan for reunification, DCS offered Mother counseling services. She completed a recommended psychological evaluation in August 2016, and the evaluating psychologist opined that the children should not be returned unless Mother could "show a commitment to protect her children from being exposed to the alleged abuser."[2]

¶6 The juvenile court granted Mother unsupervised visitation for the girls in June 2017. At a report and review hearing, Mother assured the court that she had ended her relationship with the boyfriend. The girls, however, told their grandmother that during one unsupervised visit Mother picked up the boyfriend from work with the girls in the car. The girls also stated that during another unsupervised visit the boyfriend was in the home arguing with Mother. After the case manager reported these incidents, the juvenile court revoked Mother's unsupervised visits.

¶7 On January 23, 2018, DCS filed a motion to terminate Mother's parental rights as to R.F. Mother contested the motion and a termination adjudication hearing was held in September 2018. At the hearing, the grandmother testified that Mother had told her she did not need to stop seeing the boyfriend because the allegations of abuse had not been proven. Mother denied making that statement and asserted she had

---

[2] The sisters' older brother was returned to Mother's custody in 2017 because he was almost eighteen years old, which the court considered "old enough to protect himself," so that he was not subject to the same safety concerns as the girls.

not talked to the boyfriend since the children were taken away in 2015.[3] She testified that she and the boyfriend were in the same location once in 2018 but they did not speak to each other.

**¶8**         The case manager testified that just because the children recanted their reports on different occasions did not mean their original accounts of abuse were false.  She stated Mother would regularly interrupt the girls when they tried to talk about the alleged abuse during their scheduled meetings, telling the girls they better "shut [their] mouth" before they said anything to jeopardize her parental rights.   After these confrontations, the girls would recant their allegations, and in December 2016, R.F. reported that Mother had pressured her to lie about the abuse. The case manager explained that the children's behavior was consistent with that of other children who have been abused and opined that, based on all the relevant considerations, R.F. probably had been abused.

**¶9**         After a two-day trial, the juvenile court took the matter under advisement and subsequently terminated Mother's parental rights, finding Mother failed to protect R.F. from future abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2) (2019).[4]  Alternatively, the court found Mother was unable to remedy the circumstances causing R.F.'s out-of-home placement pursuant to § 8-533(B)(8)(a) and (B)(8)(c).  The court also found that termination of Mother's parental rights was in R.F.'s best interests.[5]  Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).[6]

---

[3]      In contrast to her testimony, Mother admitted in a progress report submitted to the court in 2017 that she was having "minimal contact" with the boyfriend.

[4]      Absent material revision after the relevant dates, we cite the current version of the statutes.

[5]      The juvenile court granted a petition for guardianship as to R.F.'s older sister.  Originally, Mother filed a notice of appeal challenging both the guardianship and the termination of rights for R.F.; however, in her opening brief, Mother abandoned her appeal as to the grant of guardianship for R.F.'s sister.

[6]      The juvenile court also terminated parental rights for R.F.'s father, but he is not a party to this appeal.

**ANALYSIS**

*I.      Standard of Review*

**¶10**          To terminate parental rights, a juvenile court must find by clear and convincing evidence at least one statutory ground for termination pursuant to A.R.S. § 8-533(B) and that termination is in the best interests of the child.  *See Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, ¶ 7 (2005); *Maricopa Cty. Juvenile Action No. JS–6520*, 157 Ariz. 238, 242 (App. 1988).  We review the decision of the juvenile court for an abuse of discretion and will affirm if it is supported by sufficient evidence.  *Kenneth B. v. Tina B.*, 226 Ariz. 33, 36, ¶ 12 (App. 2010) (citation omitted).  We view the evidence in the light most favorable to sustaining the juvenile court's ruling, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000), and "we will not reverse a termination order for insufficient evidence unless, as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof," *Jade K. v. Loraine K.*, 240 Ariz. 414, 416, ¶ 6 (App. 2016) (citation omitted).

*II.      Sufficient Evidence Supports the Termination of Mother's Parental Rights Under A.R.S. § 8-533(B)(2)*

**¶11**          Mother contends that insufficient evidence supports the termination of her parental rights under A.R.S. § 8-533(B)(2), 3(B)(8)(a), and (B)(8)(c).  Because we determine sufficient evidence supports the termination pursuant to A.R.S. § 8-533(B)(2), we do not address the other statutory grounds for termination.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶12**          Section 8-533(B)(2) allows the juvenile court to terminate parental rights upon a finding of abuse or neglect by the parent.  This includes "situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child."  *Id.*  If there are multiple children in the home, a finding that one child was abused is sufficient evidence to terminate the rights for the other child—even if there is no evidence of abuse as to the other child.  *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 79, ¶ 14 (App. 2005) ("[W]e hold that § 8-533(B)(2) can mean that parents . . . who permit another person to abuse or neglect their children[] can have their parental rights to their other children terminated even though there is no evidence that the other children were abused or neglected.").  To justify termination on that basis, there must be a

connection, or "nexus," between the established abuse and the risk of future abuse to the other child at issue. *Id.* at 80 n.3, ¶ 17.[7]

**¶13** Mother first argues the juvenile court could not have relied on R.F.'s testimony that the boyfriend performed oral sex on her as evidence to support the termination order because R.F. recanted her statements. Mother asserts that when a child "recants their reports of abuse, with no corroborating evidence, then this cannot be 'clear and convincing' evidence."

**¶14** DCS provided evidence that R.F. recanted her report of abuse under duress and only because "Mother told both girls that they would be taken away if they told the truth." DCS also provided statements from R.F.'s relatives, teachers, and evaluating doctors showing that R.F. consistently reported to others the sexual acts committed by the boyfriend. In addition, the case manager opined that R.F.'s contradictory statements to DCS were consistent with her being a molestation victim.

**¶15** The termination order is unclear as to the extent the superior court relied on R.F.'s statements to support the finding under § 8-533(B)(2). Nevertheless, the record—including the statements provided by other family members, teachers and health care providers—affords sufficient evidence outside R.F.'s statements to support a determination that the abuse to R.F. occurred, and that Mother knew of the abuse towards R.F. but simply chose to believe otherwise. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22 (App. 2012) (holding the court's legal conclusion for the statutory ground at a termination hearing must be sufficiently supported by at least one factual finding).

---

[7] In *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 154, ¶ 32-33 (2018), our supreme court held that once a statutory ground for termination under § 8-533(B) has been established, the relevant inquiry then becomes whether termination is in the child's best interests. Recently, a panel of this court, interpreting *Alma S.*, concluded that the issue of "whether a connection exists between a parent's abuse of one of their children and the risk of abuse to their other children" was not a factual finding that could support grounds for termination under § 8-533(B)(2). *See Sandra R. v. Dep't of Child Safety*, 246 Ariz. 180, 187, ¶ 22 (App. 2019). Instead, such evidence is more properly considered as a part of the best interests inquiry. *Id.* Here, the juvenile court addressed the connection between the incident with the older sister and R.F.'s risk for future abuse in both the statutory grounds for termination and best interest analyses.

¶16        As to the alternative analysis, relying on a finding of abuse of R.F.'s sister to support termination of parental rights as to R.F., Mother asserts that the proof concerning the boyfriend's alleged abuse of R.F.'s sister is insufficient to support termination under § 8-533(B) and, in any event, she could not have known the boyfriend would get in the bed with R.F.'s sister while intoxicated. As such, Mother contends this one incident involving another child could not support a finding that R.F. was at risk for future acts of abuse. We disagree. The record shows DCS provided sufficient evidence to support the finding that the abuse occurred, and that a "nexus" existed between the established incident involving R.F.'s sister and the risk of abuse to R.F.

¶17        First, Mother concedes she knew that the boyfriend got into the bed and inappropriately touched her older daughter, but she asserts the incident was an accident. Even so, R.F.'s sister reported that she was afraid it would happen again and began locking her bedroom door. Notwithstanding that her daughter feared future incidents, Mother failed to take protective action — the boyfriend continued living at the house until DCS removed the children from the home.

¶18        Moreover, even after the children were adjudicated dependent due to the alleged abuse, Mother admitted in April 2017 to having continued contact with the boyfriend. Mother was granted unsupervised visits with her children, and — against the specific advice of Mother's evaluating psychologist — the girls reported that Mother allowed the boyfriend to be around them on two additional occasions. The juvenile court ultimately found that even if Mother believed the boyfriend entered her older daughter's bed by "accident," Mother did nothing to ensure that another "accident" would not occur. The juvenile court was in the best position to evaluate the credibility of the testimony given at the hearing — along with the reports made by R.F. and her sister — and we will not disturb its determination on appeal. *Alma S.*, 245 Ariz. at 151-52, ¶¶ 18-19.

¶19        Mother does not challenge the best interests finding on appeal; however, we conclude the record also supports the juvenile court's finding by a preponderance of the evidence that termination was in R.F.'s best interest. "To establish that termination is in the child's best interest, the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the relationship." *See James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998). "Evidence of an existing adoption plan can be considered a benefit to the child." *Id.* R.F.'s maternal grandparents served as her temporary placement during the dependency and termination proceedings.

The grandparents agreed to immediately adopt her upon termination of Mother's rights, and the juvenile court found that R.F. would benefit from the adoption because she would be in a safe and stable environment away from any further abuse by the boyfriend.

## CONCLUSION

¶20 Based on the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights.

