NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ALEXANDER N., *Appellant*,

*v.*

ANGELA N., T.N., E.N., H.N., E.N., *Appellees*.

No. 1 CA-JV 21-0335
FILED 8-23-2022

Appeal from the Superior Court in Navajo County
No. S0900SV202100008
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Coronado Law Firm, PLLC, Lakeside
By Eduardo H. Coronado
*Counsel for Appellant*

Angela N., Protected Address
*Appellee*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge Paul J. McMurdie joined.

---

**S W A N N**, Judge:

¶1        Alexander N. appeals from the superior court's termination of his parental rights. Because there is sufficient evidence to support the court's findings, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Alexander N. ("Father") and Angela N. ("Mother") are the biological parents of T.R.N., born 2005; E.M.N., born 2007; H.C.N., born 2010; and E.R.N, born 2017 (collectively, "the Children").

¶3        Mother and Father married in 2005. Mother testified that she suffered through Father's "explosive behavior and substance abuse" throughout their marriage. Father's drinking, marijuana use, and threats against Mother reached an all-time high during the summer and fall months of 2012. This prompted Mother to move herself and the Children to Mother's parents' house for five months. Mother and Father reconciled on the condition that he stop drinking. Father did stop drinking for over three years but relapsed in 2016. That year, Father frequently yelled at Mother and the Children, made threats, and destroyed objects in the home on a near-daily basis. The violence escalated to the point where Mother's parents would visit the home to ensure her and the Children's safety.

¶4        Father began drinking heavily in 2018. He left the marital home in December of that year and has not had any in-person contact with the Children since. The parties divorced in 2019. They agreed regarding, *inter alia*, physical custody, legal decision making, and parenting time, which agreement the family court adopted in the divorce decree. Under the agreement, Father would be entitled to parenting time once he began anger management and substance abuse programs. Father had not begun these programs by the time of the severance hearing.

¶5        In March of 2021, Mother filed a petition to terminate Father's parental rights to the Children. She alleged that Father had abandoned the Children and that his substance abuse prevented him from discharging his

parental responsibilities. She also claimed that severance was in the Children's best interests given Father's abusive behavior.

**¶6** Father was incarcerated throughout the proceedings but was present and represented by retained counsel during the trial. After hearing testimony from both parties and their witnesses, the court granted Mother's petition in October 2021. Father appeals.

## DISCUSSION

**¶7** As the trier of fact, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we review the termination order in the light most favorable to sustaining the court's decision and will not disturb the order if any reasonable evidence supports it. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009).

**¶8** Because parents have a fundamental right to parent their children, a court may only terminate parental rights if the petitioner has established one of the statutorily enumerated grounds for termination by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, ¶ 7 (2005). The superior court found that Father had abandoned the Children. A.R.S. § 8-531(1) defines abandonment as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

**¶9** Father claims that the superior court erred in finding he had abandoned the Children. We disagree.

I. MOTHER'S PROTECTIVE ORDERS DID NOT PLACE AN UNDUE BURDEN ON FATHER'S ABILITY TO SEE THE CHILDREN.

**¶10** Father argues that Mother's protective orders hindered his ability to have contact with the Children. When a parent is faced with circumstances that complicate traditional parent-child bonding, "he must act persistently to establish the relationship however possible and must

vigorously assert his legal rights to the extent necessary." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000) (citation omitted).

¶11 Mother filed her initial order of protection against Father in December 2018. Though this order included the Children, it contained a carve-out allowing Father to "peacefully message the minor children for legitimate message-only contacts." In November 2019, Mother filed a second order of protection that was extended until November 2020. Those "no-contact" orders restricted Father's ability to contact the Children. However, the decree outlined that once Father began anger management classes/counseling and a substance abuse program, he could engage in therapeutic visits with the Children through Change Point. Father never challenged the protective orders or attempted to modify them so that he could spend time with the Children under the terms of the decree.

¶12 Father admitted that he had not taken the steps necessary to see the Children but argued that his inaction was due to the COVID-19 pandemic. Specifically, he contended that he could not pay for classes because he was unemployed as a direct result of the pandemic. Father also testified he had been unable to participate in rehabilitative programs at the Navajo County Jail due to COVID restrictions, though he was attempting to make arrangements with a program coordinator. He did not present any evidence to support his claims. Father also claimed to have had substance abuse counseling with his pastor in 2020, but did not provide documentation of their sessions.

¶13 Father did not see the Children for 11 months before the 2019 no-contact order was issued, nor did he send them cards, letters, or gifts. He did not exercise his right to challenge any of the three protective orders. He did not comply with the requirements of the divorce decree. He has also failed to meet his child support obligations. Given Father's lack of involvement before and after the 2019 no-contact order, we cannot say the superior court erred in finding he had abandoned the Children.

II. THERE IS SUFFICIENT EVIDENCE IN THE RECORD TO CONCLUDE SEVERANCE WAS IN THE CHILDREN'S BEST INTERESTS.

¶14 In addition to the statutory grounds for termination, the superior court must find by a preponderance of the evidence that termination of parental rights would be in the Children's best interests. A.R.S. § 8-533(B); *In re Appeal in Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990). Termination is in a child's best interests when "the

child will benefit from termination of the relationship or . . . the child would be harmed by continuation of the relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998). The superior court found that termination was in the Children's best interests as they feared Father, did not have a relationship with him, and were thriving in their current placement with Mother. We agree.

¶15 The social study conducted at Father's request indicated that all four children seemed happy and well-adjusted, though they expressed fear of Father. The school-aged children performed well in their classes, even earning accolades. Three-year-old E.R.N. stayed home with Mother or the maternal grandmother. She considered Mother's fiancé her father and said that he was a "good guy." Mother shared that her partner intends to adopt the Children.

¶16 At trial, sixteen-year-old T.R.N. testified that she did not have a meaningful relationship with Father and had no desire to build a relationship with him. T.R.N. stated that she and her siblings feared Father, who would "get angry and throw things" as well as yell at the Children, causing "severe anxiety." She went on to say that since Father's absence, she and her siblings felt safer, happier, and less anxious. Fourteen-year-old E.M.B. corroborated her sister's statements and added that Father had rarely engaged with the Children. She stated that even when Father lived with the Children, "[h]e wasn't really there. He would just be in his garage. He didn't really care."

¶17 Mother and the maternal grandfather also testified to Father's abusive behavior. Mother claims that in 2019, Father broke into the home where she and the Children were staying. Both she and the Children received professional firearms training out of fear Father would break in and harm the family. Mother also presented evidence of Father's domestic violence conviction. The grandfather stated that the Children had previously asked to stay with him and their grandmother rather than be left alone with Father.

¶18 Father denies the abuse allegations. However, we do not re-weigh credibility on appeal. *Oscar O.*, 209 Ariz. at 336, ¶ 14. The record contains sufficient evidence to support the superior court's conclusions, so we will not disturb its findings.

III.    THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY
        TAKING JUDICIAL NOTICE OF THE SOCIAL STUDY.

¶19        At trial, Mother asked the court to take judicial notice of the
social study conducted by court order at Father's request.  Father objected
that Mother had not previously disclosed the study and that the study's
author was not present for testimony or cross-examination.  The court took
judicial notice of the study but noted that it would "give [the study] the
weight it deems appropriate" given the author's absence.

¶20        Courts must generally "hear any competent and potentially
significant evidence that bears on the best interests of the child."  *James A.
v. Dep't of Child Safety*, 244 Ariz. 319, 322, ¶ 8 (App. 2018).  Arizona Rule of
Procedure for the Juvenile Court 315(g) allows the court to exclude
documentary evidence when a party fails to comply with disclosure
deadlines.    However, the same section cautions against excluding
"competent and potentially significant evidence that bears on the child's
best interests."

¶21        In *James A.*, the appellant requested a continuance of the
termination hearing so that an expert bonding report detailing his
relationship with the child could be admitted as evidence.  224 Ariz. at 321,
¶ 4.  The court denied the motion and precluded his untimely disclosure
partly because the report's author would not be present for the hearing.  *Id.*
at 321, 322, ¶¶ 5, 9.  We held that the superior court abused its discretion by
failing to admit "potentially outcome-determinative" evidence.  *Id.* at 322,
¶ 13.

¶22        Like the bonding report in *James A.*, the social study here
holds significant evidentiary value.  Specifically, the social study includes
an assessment of the Children's current placement and the expert's
recommendation regarding the termination of Father's parental rights.
Precluding such evidence would deny the court invaluable information
regarding the best interests of the Children.  We therefore hold that the
superior court did not abuse its discretion by admitting the social study
over Father's objection.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA